IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | |
|---|---|
| **MELANIE J. McCLELLON, Debtor** | **CASE NO. 18-51474-KMS** |
| | Chapter 7 |
| **KIMBERLY R. LENTZ, as Chapter 7 Trustee for** | |
| **The Bankruptcy Estate of Melanie J. McClellon, Debtor** | **PLAINTIFF** |
| V. | Adversary Proceeding _____ KMS |
| **RELIANT ACCOUNT MANAGEMENT, LLC,** | |
| **GRT FINANCIAL, INC., HURON LAW GROUP, PLLC** | **DEFENDANTS** |

## COMPLAINT

COMES NOW Plaintiff, Kimberly R. Lentz, Chapter 7 Trustee for the Bankruptcy Estate of Melanie J. McClellon, (hereinafter the "Trustee") by and through her attorney and files this complaint, individually and collectively against Defendants, Reliant Account Management, LLC ("RAM"), GRT Financial, Inc., ("GRT") and Huron Law Group, PLLC ("Huron Law") collectively hereinafter referred to as ("Defendants") and in support thereof would respectfully show unto the Court the following:

## JURISDICTION & VENUE

1. Jurisdiction is conferred on this Court pursuant to the provisions of Section 1334 of Title 28 of the United Stated Code in that this proceeding arises in and is related to the above-captioned Chapter 7 case under Title 11 and concerns property of the Debtor in that case.

2. This Court has both personal and subject matter jurisdiction to hear this case pursuant to Section 1334 of Title 28 of the United States Code and Section 157(b) of Title 28 of the United States Code. This matter is primarily a core proceeding and therefore the Bankruptcy Court has jurisdiction to enter a final order.

3. Venue lies in this District pursuant to Section 1409(a) of Title 28 of the United States Code.

4. This adversary proceeding is commenced pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure. The Trustee brings claims to enforce the Bankruptcy Code, for the recovery of money/property and accounting.

**PARTIES**

5. The Trustee or Plaintiff is the Chapter 7 Trustee for the above styled and numbered Chapter 7 proceeding and Estate. The Trustee consents to the entry of orders, rulings and judgments by this Court.

6. RAM is a limited liability company organized under the laws of Tennessee and located at 412 N. Cedar Bluff Road, Ste. 400, Knoxville, TN 37923-3628. RAM receives and holds consumer funds in trust accounts for debt management service providers ("DMSPs") and consumers. RAM may be served upon its registered agent for service of process, Sara Paquette, at 412 N. Cedar Bluff Road, Ste. 400, Knoxville, TN 37923-3628.

7. GRT is a corporation organized under the laws of Michigan and located 26711 Northwestern Highway, Suite 350, Southfield, Michigan 48033. GRT is one of several DMSPs that RAM partners with to provide debt management services to Mississippians. GRT may be served upon its registered agent for service of process, Charles N. Degryse, at 26711 Northwestern Highway, Suite 350, Southfield, Michigan 48033.

8. Huron Law is a professional limited liability company organized under the laws of Michigan. Huron Law claims to be a law firm providing legal services and debt management services to Mississippians. Huron Law is one of several DMSPs that RAM partners with to provide debt management services to Mississippians. Huron Law's principal place of business is 30600 Telegraph Road, Suite 1131, Bingham Farms, Michigan 48025. Huron Law may be served upon its registered agent for service of process, Donald B. Lifton, 30600 Telegraph Road, Suite 1131, Bingham Farms, Michigan 48025.

## FACTS

### *Facts specific to the Melanie J. McClellon*

9. Prior to filing for bankruptcy, Melanie J. McClellon, a.k.a Melanie Davis ("McClellon") was struggling financially.

10. McClellon was trying to manage debt from a divorce and doctor visits. She also had some credit card debt and a loan with Harrison Finance Company.

11. McClellon began to look for options to deal with her debt.

12. McClellon saw an advertisement on the internet for debt relief with GRT.

13. McClellon contacted GRT and spoke to Israel Rodriguez, a sales representative with GRT.

14. Israel told McClellon that GRT could resolve her debts within two years. Israel also told McClellon that she could avoid filing for bankruptcy.

15. GRT told McClellon that legal representation was part of her debt management plan in the event she was sued by one of her creditors.

16. McClellon's debts were putting a strain on her life and the debt management plan as proposed by GRT sounded like the solution to her financial problems.

17. After getting off the phone with Israel Rodriguez of GRT, McClellon received contracts and other documents to sign. Believing that GRT could resolve all of her debts and she could avoid bankruptcy, McClellon signed the documents. **Ex A.**

18. Based on their experience in the field of debt relief, GRT and RAM created a debt management plan for McClellon. As part of that plan, McClellon was told to stop making payments to her creditors and instead pay GRT and RAM $492.45 per month.

19. GRT sent McClellon a "What to Expect" email which stated: "Your creditor accounts will begin to age. This is necessary for us to be able to settle your debt." In addition GRT stated, "Creditors and

collectors will call you. It is just part of the process. They will do whatever it takes to intimidate you into making a payment. They want you in the Pay for Life Plan. Remember to stay firm in the decision you made. You are on a path to financial freedom." ***Ex B.***

20. McClellon received an email from RAM informing her that Huron Law was part of their debt relief team. ***Ex C.***

21. McClellon paid GRT and RAM $492.45 per month for several months.

22. RAM created a trust account to hold McClellon's money. ***Ex D***[1].

23. RAM charged McClellon monthly fees of $29.95 and $9.95. ***Ex E.***

24. After several months in the Defendant's program, McClellon was sued by Harrison Finance Company. ***Ex F.***

25. McClellon sent the complaint to GRT as directed.

26. Despite being promised legal representation in the event of a lawsuit, GRT and Huron Law did not provide any legal services to McClellon.

27. Instead, GRT emailed a pro se answer to McClellon to file in response to the complaint filed by Harrison Finance Company. ***Ex G***

28.  McClellon does not recall any attorney involvement from Huron Law.

29. Amazingly, McClellon was charged a "Program Related Fee" of $1,199.00 near the time of the Harrison Finance Company lawsuit. ***Ex E***

30. McClellon called GRT to discuss this fee.

31. Robert Yobert of GRT informed McClellon that a term settlement had been obtained with Harrison Finance Company which required her to make monthly installments of $150.00 per month.

---

[1] Ex D is a RAM account agreement from a different consumer, but believed to contain the same language.

32. McClellon did not authorized this settlement.

33. McClellon was charged $1,199.00 for an unauthorized settlement.

34. The Defendants intentionally made McClellon believe their debt management program was a feasible solution to her problem. The Defendants caused McClellon to lose valuable resources, such as the loss of the use of funds. The amount of McClellon's debt increased during her "enrollment into the program". The Defendants caused McClellon to suffer from stress, worry, embarrassment and emotional distress. McClellon feared negative effects to employment and credit.

35. On July 31, 2018, McClellon was forced to file chapter 7 bankruptcy even though she enrolled in the Defendant's program to avoid bankruptcy. McClellon listed unsecured debt of $37,032.60.

36. The Defendants failed to perform the services promised. McClellon did not receive legal services. McClellon's debts are still outstanding.

### *Facts specific to the Defendants*

37. RAM is a for-profit company whose principal business is receiving and holding funds collected from consumer debtors for the purpose of distributing said funds among the consumer debtors' creditors.

38. RAM admits it receives and holds consumer funds in a trust account. ***Ex D***.

39. RAM acts in concert with for-profit DMSPs, like GRT, Huron Law, Regis Law Group and Fremont Law Group, by carrying out activities integral to debt management programs marketed to indebted consumers.

40. The monthly payments made by consumer debtors like McClellon to RAM cover three things: (i) the DMSP's fee for debt management services; (ii) RAM's fee for trust account services; and (iii) the consumer's savings, which are set aside for future settlements of the consumer's debts, as negotiated by the DMSPs.

41. RAM's trust accounts are a device employed by DMSPs as a seamless component feature of a debt management program. Trust accounts benefit the Defendants in two principal ways. Trust accounts secure periodic automatic payments from consumers for purposes of paying excessive debt management fees. Further, the trust accounts serve as an artifice for evading state and federal regulations governing debt management fees through pretense that the Defendants did not receive the consumer's debt management payments. In the unlikely event that heavily indebted consumer debtors like McClellon financially survive the Defendants' excessive fees, the trust accounts accumulate funds from which the Defendants attempt negotiations with consumers' creditors, in exchange for additional fees.

42. Structurally, trust accounts are like savings accounts managed by RAM, which reflect the beneficial interest of the individual consumer debtors participating in a debt management program.

43. RAM financially benefits from the creation of the trust accounts in that it charges consumer debtors like McClellon additional fees and charges, beyond those already charged by the DMSPs.

44. The Defendants prey on consumer debtors like the McClellon by luring them into a debt management program the Defendants know is not a viable option. [2]

45. RAM and these DMSPs use the words "law firm" and "legal services" to mislead consumer debtors into thinking they are retaining a lawyer.

46. The Defendants market their debt management program as a low-cost/affordable debt management option. However, their program only kicks the can down the road by collecting portions of amounts owed to others while siphoning fees from consumers. The Defendants benefit from the program regardless of the

---

[2] Other known Mississippi consumers are: Thomas Williams (17-52162-KMS), Angela Anderson (18-50052-KMS), Karen Nunez (18-51548-KMS) and Samih Alkhatib.

outcome for the consumer. RAM knowingly participates with the DMSP in this scheme. The partnership between the DMSPs and RAM defrauds consumer debtors like McClellon.

## COUNT I.

## TURNOVER OF ESTATE PROPERTY

47. The Trustee incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

48. Section 541 of the Bankruptcy Code defines property of the estate as "all legal or equitable interest of the debtor in property as of the commencement of the case." 11U.S.C. § 541(a)(1). Section 542 of the Bankruptcy Code gives Trustee the power to seek turnover of all property of Debtor's estate.

49. Prior to filing her petition with the Bankruptcy Court, McClellon hired the Defendants to provide certain services related to her debts.

50. McClellon paid fees and expenses to Defendants in exchange for certain debt management, negotiation and legal services. McClellon paid over $2,700.00 into the debt management program.

51. Defendants have collected fees from McClellon but have not adequately provided the promised services.

52. Upon information and belief, the Defendants have engaged in a pattern and practice of violating 11 U.S.C. § 329 and 11 U.S.C. § 526. Therefore, the Trustee respectfully requests that the Defendants be required to turn over pursuant to 11U.S.C. § 542(e): any and all records (whether stored in electronic or hard copy format) related to any and all aspects of the bankruptcy and debt management programs, including but not limited to, any and all records related to any and all individuals in Mississippi for whom the Defendants performed or agreed to perform any aspect of debt management programs.

## COUNT II.

## FRAUDULENT TRANSFERS

53. The allegations in the above paragraphs of this Complaint are re-alleged and incorporated herein by this reference.

54. Within two years of the filing of her petition for bankruptcy, McClellon transferred substantial sums of her money to or for the benefit of the Defendants (hereinafter "transfers").

55. McClellon received less than a reasonable equivalent value in exchange for such transfers.

56. McClellon was insolvent on the date such transfers were made, became insolvent as a result of such transfers, and/or had unreasonable small capital in relation to her business or her transaction at the time or as a result of the transfers.

57. Trustee may avoid the fraudulent transfers under 11U.S.C. §§ 544 and 548. Trustee may recover the transfers for the estate under 11U.S.C. § 550.

## COUNT III.

## ACCOUNTING

58. The Trustee incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

59. Section 542 of the Bankruptcy Code gives the Trustee the power to seek an accounting.

60. Upon information and belief, the Defendants have engaged in a pattern and practice of violating 11 U.S.C. § 329 and 11 U.S.C. § 526. The precise amount of money due from the Defendants to McClellon is unknown and cannot be ascertained without: (1) knowing the amount of money that they collected in fees for services that were not performed and/or not adequately performed; and (2) knowing the amount of money distributed from McClellon's trust account (3) acquiring any and all records (whether stored in electronic or hard copy format) relating to any and all aspects of the bankruptcy and debt management

programs, including, but not limited to, any and all records relating to any and all individuals in Mississippi for whom Defendants performed or agreed to perform any aspect of debt management program.

## COUNT IV.

## 11 U.S.C. § 329

61. The Trustee incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

62. Prior to filing the chapter 7 bankruptcy petition, McClellon retained the Defendants to assist with her debts.

63. For these services, McClellon paid the Defendants $492.45 per month.

64. These payments exceed the reasonable value of the services provided to McClellon.

65. These payments were made in contemplation of or in connection with bankruptcy.

66. Pursuant to 11 U.S.C. § 329 and Bankruptcy Rule 2017, the Trustee requests the Court to order the Defendants to return all payments made by McClellon.

## COUNT V.

## 11 U.S.C. § 526

67. The Trustee incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

68. McClellon desired assistance and advice on how to address her debt situation.

69. McClellon paid the Defendants $492.45 per month for said representation.

70. GRT is a "debt relief agency" as defined by 11 U.S.C.S. § 101(12A).

71. McClellon is an "assisted person" as defined by 11 USC § 101(3).

72. McClellon sought out GRT to avoid bankruptcy. McClellon was led to believe that the debt

9

management program would reduce her debt and she could avoid bankruptcy.

73. Israel Rodriguez told McClellon that GRT could resolve her debts within two years. Israel also told McClellon that she could avoid filing for bankruptcy.

74. GRT also told McClellon that legal representation was part of her debt management plan in the event she was sued by one of her creditors.

75. Israel Rodriguez of GRT provided "bankruptcy assistance" to McClellon as defined by 11USC § 101(4A).

76. Upon information and belief, the agreement between GRT and McClellon provides information and advice about bankruptcy.

77. The agreement provides "bankruptcy assistance" to McClellon as defined by 11USC § 101(4A).

78. GRT failed to perform the promised services described in agreement and as described by Israel Rodriguez. Therefore, GRT violated 11 U.S.C § 526(a)(1).

79. GRT misrepresented the services it would provide to McClellon under the agreement and as described by Israel Rodriguez. Therefore, GRT violated 11 U.S.C § 526(a)(3).

## COUNT VI.

## BREACH OF FIDUCIARY DUTY

80. The Trustee incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

81. The Defendants stood in a fiduciary relationship to McClellon.

82. The Defendants held McClellon's money in a trust account.

83. The Defendants had a duty to act for the benefit of McClellon on all matters within the scope of their respective relationships.

84. The Defendants owed McClellon the utmost duty of good faith and fair dealing and a duty to put the interests of McClellon before their own interests.

85. The Defendants were under a duty to exercise a high standard of care in managing McClellon's financial affairs.

86. The Defendants assumed control and responsibility over McClellon's affairs within the context of their relationships.

87. The Defendants breached their duties to McClellon by failing to competently and diligently provide services to McClellon.

88. The Defendants breached their duties to McClellon by failing to supervise the services promised to McClellon.

89 The Defendants breached their duties to McClellon by charging unreasonable fees.

90. The Defendants breached their duties to McClellon by placing their own financial interests above the interests of McClellon.

91. The Defendants breached their duties to McClellon by misleading McClellon regarding the promised services.

92. McClellon did not receive the services GRT led her to believe she was going to receive despite paying $492.45 to GRT and RAM for several months.

93. RAM aided and abetted the breach of fiduciary duty by Huron Law and GRT.

    a. RAM knew of these breaches and was in fact on notice that fewer than 10 percent of consumers successfully complete debt management programs and received the benefit of the legal representations offered by Defendants and other debt management programs. [3]

---

[3] The Government Accountability Office issued a report on the dangers posed by entities like the Defendants wherein, among other things, the GAO found that fewer than 10 percent of consumers

11

b. GRT instructed McClellon to withhold payment from her creditors and divert these funds to a "trust account" with RAM.

c. RAM acted in concert with the other Defendants by holding McClellon's funds. From these funds it collected its own fees, paid fees to the Defendants and made partial payments to some creditors.

d. RAM's conduct is an integral part of ensuring that Defendants get paid their fees regardless of any benefit conferred upon McClellon and allowing it to enrich itself regardless of any benefit to McClellon.

e. McClellon made payments each month to RAM. The monthly payments made by McClellon are used for three purposes: (i) GRT's fees for debt management services; (ii) RAM's fee for trust account services; and (iii) the consumers' savings, which are set aside for future settlements of the consumers' debts, as negotiated by GRT.

f. RAM's so-called trust accounts are an integral part of the debt management program. In fact, the trust accounts are devices used by GRT in its contract with McClellon.

g. In addition to the contracts with GRT, McClellon signed a separate trust account application with RAM wherein RAM is retained as agent, custodian, and fiduciary of the consumers to establish, manage, and maintain a savings account and perform activities with respect to the trust account

h. RAM aided and abetted GRT in siphoning money away from McClellon by promising her debt relief that would never come.

94. The Defendants are not licensed to practice law in Mississippi.

**WHEREFORE,** the Trustee having set forth her claims for relief against Defendants respectfully

---

successfully complete debt settlement programs. *Debt Settlement: Fraudulent, Abusive, and Deceptive Practices Pose Risk to Consumers, GAO-10-593T (April 22, 2012).*

prays of the Court as follows:

    A.    That this Court order Defendants to turn over: any and all records (whether stored in electronic or hard copy format) related to any and all aspects of the debt management programs and bankruptcy services, including but not limited to, any and all records related to any and all individuals in Mississippi for whom Defendants performed or agreed to perform any aspect of the debt management program and bankruptcy services.

    B.    That this Court order Defendants to account for the precise amount of money due from Defendants to McClellon.

    C.    That this Court order Defendants to pay actual damages, including economic and non-economic damages, as well as attorney fees in a sum to be determined by the Court

    E.    That this Court order Defendants to pay punitive damages in order to deter Defendants from committing these acts in the future.

    F.    That McClellon have such other and further relief as the Court may deem just and proper, including equitable relief.

This the 23rd day of October, 2018.

    Respectfully submitted,

*/s/Jason Graeber.*
Jason Graeber Attorney for Trustee, Kimberly R. Lentz
2496 Pass Road
Biloxi, Mississippi 39531
Telephone:  (228) 207-7117
Facsimile:  (228) 207-8634
MSB No.:  101267
jason@jasongraeberlaw.com